IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

NATHAN GUTIERREZ,

    Plaintiff,

v.                                                      Civ. No. 20-552 KK

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER[1]

THIS MATTER is before the Court on Plaintiff Nathan Gutierrez's Motion to Reverse and Remand for Rehearing (Doc. 39) filed on April 12, 2021. The Acting Commissioner of the Social Security Administration ("Commissioner") filed a Response, and Mr. Gutierrez filed a Reply. (Docs. 43, 44.) Having meticulously reviewed the entire record and the relevant law and being otherwise fully advised, the Court finds that the Motion is well-taken and should be GRANTED.

### I. Background and Procedural History

Mr. Gutierrez brings this suit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the Commissioner's decision denying his claim for Title II disability insurance benefits ("DIB"). (Doc. 1.) Mr. Gutierrez filed a claim for DIB on April 24, 2017, alleging disability since March 30, 2017[2] due to panic attacks, depression, anxiety, sleep apnea, recovering alcoholism, and recovering drug addiction. (AR 91–92.)[3] His claim was denied initially and upon reconsideration.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct proceedings and enter judgment in this case. (Doc. 21.)

[2] Mr. Gutierrez later amended his alleged disability onset date to October 1, 2017. (AR 17.)

[3] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on January 27, 2021. (Doc. 34.)

1

(AR 117, 126.) Mr. Gutierrez requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 11, 2019. (AR 34–89.)

The ALJ issued an unfavorable ruling on May 20, 2019. (AR 15–27.) The ALJ found that Mr. Gutierrez suffered from the following severe impairments: obesity, mild degenerative joint disease and osteoarthritis of the left foot, obstructive sleep apnea, insomnia, diabetes mellitus, generalized anxiety disorder, persistent major depressive disorder, adjustment disorder with mixed emotional features, panic disorder without agoraphobia, bipolar I disorder, and post-traumatic stress disorder. (AR 17.) However, he determined that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18.) The ALJ found that Mr. Gutierrez had the capacity to perform medium work, as defined in 20 C.F.R. § 404.1567(b), with some additional mental limitations. (AR 21.) Because jobs existed in the national economy that an individual with Mr. Gutierrez's RFC could perform, the ALJ determined that Mr. Gutierrez was not disabled. (AR 25–26).

The Appeals Council denied review on April 28, 2020, and the ALJ's decision became administratively final. (AR 1–3.) Mr. Gutierrez's Motion is now before the Court.

## II. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to whether the final decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (citation omitted). This constitutes "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley,* 373 F.3d at 1118 (citation omitted), or "constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include consideration of "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

### III.  Analysis

Mr. Gutierrez raises five points of error in the ALJ's formulation of his RFC: (1) failure to incorporate or explain the "marked" social limitation found at step three of the sequential analysis; (2) failure to incorporate or explain the "moderate" limitations identified by Richard Sorensen, PhD; (3) failure to consider contrary evidence; (4) failure to make findings about the effect of Mr. Gutierrez's obesity on his RFC; and (5) error in assessing Mr. Gutierrez's symptoms. In addition, Mr. Gutierrez argues that the ALJ erred in his step five determination of whether Mr. Gutierrez was able to perform other jobs existing in significant numbers in the national economy. For the reasons stated below, the Court finds that reversal is warranted.

**A.  Incorporation of the "Moderate" Limitations Found by Richard Sorensen, PhD**

The Court turns first to Mr. Gutierrez's argument that the ALJ erred by failing to either incorporate or explain his rejection of several moderate limitations found by State agency psychological consultant Richard Sorensen, PhD, in his Mental Residual Functional Capacity assessment ("MRFCA").

3

Dr. Sorensen reviewed Mr. Gutierrez's case on June 16, 2017. On the worksheet portion of the MRFCA, referred to as "Section I," Dr. Sorensen assessed "moderate" limitations in the following areas: (1) the ability to understand, remember and carry out detailed instructions; (2) the ability to maintain attention and concentration for extended periods; (3) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and (4) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[4] (AR 99–100.) In the narrative discussion section following each limitation, Dr. Sorensen wrote only "see prt," presumably referring to the Psychiatric Review Technique ("PRT") portion of his medical evaluation. (AR 95–96, 99–100.)

In the PRT, after summarizing Mr. Gutierrez's medical records, Dr. Sorensen provided the following assessment:

> [Claimant] has a long [history] of depression, anxiety, with panic attacks, apparently secondary to feeling harassed by co-workers. He has been on multiple meds and has recently requested therapy. In spite of these ongoing problems, he has been able to maintain periods of employment in what would appear to be very stressful jobs (call center). While it may be unrealistic for his [sic] to attempt continuing to work in such an environment, he would appear capable of working in a less stressful setting.

(AR 95–96.) Dr. Sorensen also provided further narrative discussion under the "Additional Explanation" heading of the MRFC:

> The claimant can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. He would do best in a setting without strict production quotas and low contact with the public and coworkers.

(AR 100.)

---

[4] In addition, Dr. Sorensen found several other moderate limitations. *See* (AR 99–100). The Court does not address those other limitations because Mr. Gutierrez alleges no related error.

In reviewing the evidence of Mr. Gutierrez's mental impairments to determine his RFC, the ALJ discussed Dr. Sorensen's prior administrative findings[5] as follows:

> The DDS psychological consultants opined that the claimant has been capable of understanding, remembering, and carrying out simple instructions; making simple decisions; attending and concentrating for two hours at a time; interacting with coworkers and supervisors adequately; responding appropriately to change in a routine work setting; and that the claimant would function best in an environment without strict production requirements and with minimal levels of interaction with coworkers and the public. (Ex. 2A/5–6 and 9–11; and 4A 8–9). Their opinions are consistent with the claimant's intact grooming, memory, concentration, insight, and judgment, as well as his pleasant or cooperative behavior. Additionally, their opinions are also consistent with the lack of inpatient psychiatric care other than an exacerbation caused in part by the claimant's medications and which quickly resolved after his medications were adjusted. Accordingly, the undersigned finds the opinions provided by the DDS psychological consultants persuasive.

(AR 24.) The ALJ restricted Mr. Gutierrez to performing "simple, routine tasks involving only simple, work-related decisions" and to "work not involving the satisfaction of strict production quotas or assembly line paced work." (AR 21.) The ALJ found that Mr. Gutierrez retained the ability to deal with changes in a routine work setting and to maintain attention and concentration for intervals of at least two hours. (AR 21.)

Mr. Gutierrez argues that the above restrictions do not reflect the limitations assessed by Dr. Sorensen in Section I of the MRFCA. Although the ALJ was not required to adopt the findings of Dr. Sorensen or any other consultative examiner, he was likewise "not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). To that end, an ALJ commits reversible error where he fails to explain why he rejected some of an examiner's

---

[5] As the Commissioner notes in her briefing, MRFC assessments of State agency psychological consultants are characterized as "prior administrative findings," rather than "opinions," for claims filed on or after March 17, 2017. *See* 20 C.F.R. § 404.1520c. However, it does not appear that the change in terminology has altered the ALJ's duty to consider and explain his consideration of these findings. *See* 82 Fed. Reg. 5844, 5852 ("Our rules in current 404.1527(e)(2) and 416.927(e)(2) require us to consider and articulate our consideration of prior administrative medical findings using the same factors we use to consider medical opinions.").

moderate limitations but adopted others. *Id.*; *Parker v. Comm'r*, 922 F.3d 1169, 1172–73 (10th Cir. 2019). Generally, though, the ALJ need only consider and discuss the examiner's findings in the narrative discussion portion ("Section III")—as opposed to the worksheet portion (Section I)—of the MRFCA.[6] *See, e.g.*, *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) ("The POMS provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment.").

Mr. Gutierrez does not contend that the RFC failed to account for any of the limitations Dr. Sorensen found at Section III. However, the Tenth Circuit has recognized an exception to the general rule where the narrative discussion contradicts or omits without explanation one or more limitations found in the worksheet. In this event, the ALJ must consider those limitation(s) as set out in Section I. *See id.* at 619 ("[I]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.") (citations omitted); *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015) (noting that an ALJ may not "turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III").

Mr. Gutierrez invokes this exception, arguing that neither the ALJ's RFC determination nor Dr. Sorensen's narrative discussion properly accounted for the moderate limitations listed above. There is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2010). However, "[u]nless the connection (between the limitation

---

[6] This narrative, or "Section III," discussion may be documented under "MFRC – Additional Explanation" as Dr. Sorensen did here. POMS DI 24510.060(B)(4).

and the work) is obvious . . . the agency must ordinarily explain how a work-related limitation accounts for mental limitations reflected in a medical opinion." *Parker*, 922 F.3d at 1172. The Court must therefore consider each limitation in turn to evaluate whether the Agency discharged its obligation.

### 1. Understanding, Remembering, and Carrying Out Detailed Instructions

At Section I, Dr. Sorensen assessed moderate limitations in the abilities to "understand and remember detailed instructions" and "carry out detailed instructions." (AR 99.) In his narrative discussion, Dr. Sorensen opined that Mr. Gutierrez could "understand, remember and carry out simple instructions" and make "simple decisions." (AR 100.) The ALJ restricted Mr. Gutierrez to "simple, routine tasks involving only simple, work-related decisions." (AR 21.) This RFC effectively limited Mr. Gutierrez to unskilled work,[7] (AR 26), which does not require the ability to understand, remember, or carry out detailed instructions. *See, e.g., Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (citing SSR 96-9p, 1996 WL 374185, at *9).

The Court finds that both Dr. Sorensen's narrative discussion and the RFC determination adequately accounted for Mr. Gutierrez's moderate limitations in understanding, remembering, and carrying out detailed instructions. Although the ALJ could have been more explicit in addressing Mr. Gutierrez's ability to cope with "instructions," as opposed to discussing "tasks" and "decisions," the Court finds that the restriction to simple, routine tasks and simple, work-related decisions effectively incorporated the identified limitations. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal."). This conclusion is supported

---

[7] Each of the jobs identified at step five has a specific vocational preparation ("SVP") of two, which equates to unskilled work.

by case law. In *Haga*, the court found that RFC restrictions to "simple, repetitive tasks" and "no requirement for making change" sufficiently accounted for limitations in understanding, remembering, and carrying out detailed instructions. 482 F.3d at 1208. In *Nelson*, a restriction to unskilled work accounted for the same. 655 F. App'x at 628–29. The Court therefore finds that the ALJ both discussed and clearly incorporated Mr. Gutierrez's moderate limitations with respect to detailed instructions.

### 2. Maintaining Attention and Concentration

Dr. Sorensen also assessed a moderate limitation in Mr. Gutierrez's ability to "maintain attention and concentration for extended periods." (AR 99.) Despite this finding, Dr. Sorensen opined in the narrative discussion that Mr. Gutierrez could "attend and concentrate for two hours at a time." (AR 100). The ALJ found the same. (AR 21.) As Mr. Gutierrez points out in his briefing, two hours is the degree of "extended" attention and concentration that is needed for "any job." POMS DI 25020.010(B)(2)(a). The opinion contained in the narrative discussion therefore created an apparent—and apparently unexplained—conflict with the moderate limitation found in Section I.

At least one court within this District has found reversible error on the same basis. In *Milner v. Berryhill*, the psychological consultant "found in Section I that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, yet concluded in Plaintiff's mental RFC that Plaintiff can nevertheless attend and concentrate for two hours at a time." 2018 WL 461095, at *12 (D.N.M. Jan. 18, 2018). The court noted that these two conclusions were "consistent only if the Court finds that an 'extended period' is longer than two hours," which it declined to do. *Id.* The court therefore held that "the internal inconsistency of [the consultant's] opinion means that his opinion cannot be substantial evidence that supports the ALJ's assessment

of Plaintiff's RFC," and that the ALJ erred in relying on it. *Id*.

This Court finds the same internal inconsistency between Dr. Sorensen's worksheet and his narrative findings. In this instance, however, the Court also finds that the RFC restriction to unskilled work and "simple, routine tasks" was sufficient to incorporate Dr. Sorensen's worksheet finding of a moderate limitation in attention and concentration. (AR 21.)

The Tenth Circuit has held that a restriction to simple tasks and/or unskilled work may, under some circumstances, account for such a limitation. In *Smith v. Colvin*, several moderate limitations, including a limitation in maintaining attention and concentration, were sufficiently incorporated in the RFC by a restriction to "simple, repetitive, and routine tasks."[8] 821 F.3d 1264, 1268–69 (10th Cir. 2016). Similarly, in *Vigil v. Colvin*, the court found that "the ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work." 805 F.3d 1199, 1204 (10th Cir. 2015). To be sure, these cases are somewhat distinguishable from the case at bar. In *Smith*, unlike here, the court did not discuss any inconsistency between the examiner's Section I and Section III findings. 821 F.3d at 1269 n.2. In *Vigil*, the ALJ specifically considered evidence indicating that the claimant "retain[ed] enough memory and concentration to perform at least simple tasks." 805 F.3d at 1203–04.

Notably, however, the *Smith* court also discussed the Tenth Circuit's prior unpublished decision in *Lee* and found it "persuasive." *Smith*, 821 F.3d at 1269. In *Lee* the court found, explicitly, that a Section I moderate limitation in the ability "to maintain attention and concentration for extended periods" was precisely equivalent to a Section III finding and RFC determination that the "Claimant can perform simple tasks." 631 F. App'x at 542. In light of this unequivocal precedent and its endorsement by a published decision, the Court finds that the

---

[8] The only other mental restriction in the *Smith* claimant's RFC was related to interaction with the public, 821 F.3d at 1269, which has no evident connection to her limitations in attention and concentration.

restriction to unskilled work and "simple, routine tasks" was sufficient to incorporate Dr. Sorensen's Section I finding of moderate limitations in maintaining attention and concentration for extended periods. Therefore, the ALJ did not err in relying only on Dr. Sorensen's Section III narrative discussion, and reversal on this basis would be inappropriate.

### 3. Performing Within a Schedule, Maintaining Regular Attendance, and Being Punctual Within Customary Tolerances

Dr. Sorensen found in the worksheet portion of the MRFC that Mr. Gutierrez was moderately limited in his ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (AR 99.) In spite of this finding, Dr. Sorensen did not address either attendance or punctuality in his narrative discussion. He did, however, opine that Mr. Gutierrez "would do best in a setting without strict production quotas." (AR 100.) The ALJ adopted this restriction almost verbatim, limiting Mr. Gutierrez to "work not involving the satisfaction of strict production quotas or assembly line paced work," but likewise engaged in no discussion of either punctuality or attendance. (AR 21.)

As an initial matter, the Court finds that both the RFC and Dr. Sorensen's narrative MRFC reasonably incorporated Mr. Gutierrez's limitation in performing activities within a schedule through their pace-related restrictions. The question, therefore, is whether they likewise incorporated his limitations in maintaining attendance and punctuality.

Limitations in these areas were not discussed in *Vigil*, *Smith*, or *Lee*. They are, however, listed in the Program Operations Manual System ("POMS") as "Mental Abilities Needed for Any Job." POMS DI 25020.010(B)(2)(a). Further, the ability to maintain regular attendance and to be punctual within customary tolerances is "critical" for the performance of unskilled work, and—as distinct from nearly all other "critical" abilities—"[t]hese tolerances are usually strict."[9] *Id*.

---

[9] The ability to maintain a schedule, by contrast, is "not critical." *Id*.

25020.010(B)(3)(e). In spite of the importance of these requirements, there is no evidence that the ALJ considered Mr. Gutierrez's ability to maintain regular attendance and punctuality, as he engaged in no discussion of these limitations. There is certainly no explanation, either in Dr. Sorensen's narrative discussion or in the ALJ's written decision, of how Mr. Gutierrez could meet the demands of unskilled work despite these moderate limitations—which appear, on their face, to be incompatible with the demands of *any* work.

Nor is the relationship between these limitations and the mental restrictions contained in the RFC "obvious" to this reviewing Court. *Parker*, 922 F.3d at 1172. The restrictions incorporated in Mr. Gutierrez's RFC—to simple tasks and decisions, work not involving production quotas or an assembly line pace, and limited interaction with others—have no clear bearing on his ability to attend work regularly and on time. The Commissioner makes no compelling argument to the contrary. (*See* Doc. 43 at 8–10.) Therefore, particularly in light of the "strict," "critical," and highly specific nature of these requirements, the Court finds that the ALJ's failure to either incorporate or discuss these limitations constituted reversible error.

### 4. Completing a Normal Workday Without Interruptions from Psychologically Based Symptoms and Performing at a Consistent Pace

Finally, Mr. Gutierrez makes the same argument with respect to Dr. Sorensen's Section I finding of a limitation in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 99.) The Court finds that Mr. Gutierrez's limitation in performing at a consistent pace was clearly incorporated into the RFC by the restriction to "work not involving the satisfaction of strict production quotas or assembly line paced work." (AR 21.) The other limitation, however, presents a more difficult question.

Relevant to Mr. Gutierrez's ability to complete a workday without interruptions from

psychologically based symptoms, Dr. Sorensen noted in the PRT his "long [history] of depression, anxiety, with panic attacks, apparently secondary to feeling harassed by co-workers." (AR 95.) Nevertheless, Dr. Sorensen noted his ability "to maintain periods of employment in what would appear to be very stressful jobs." (AR 95–96.) He ultimately opined that Mr. Gutierrez would be "capable of working in a less stressful setting." (AR 96.) The ALJ correspondingly summarized and discussed Mr. Gutierrez's history of experiencing panic attacks and other psychological symptoms while at work, as well as his prior need for inpatient psychiatric treatment. (AR 20, 22, 23.) He concluded that Mr. Gutierrez retained the capacity to work despite this history of interruptions from his psychologically based symptoms. (AR 21.)

Although the ALJ "admittedly could have been more explicit in tying the former discussion to the latter conclusion," *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013), his explanation was sufficient to allow the Court to follow his reasoning, i.e., that Mr. Gutierrez could work despite interruptions from his psychologically based symptoms. The ALJ was under no duty to incorporate any of the Section I limitations assessed by Dr. Sorensen, so long as he explained his decision not to do so. The Court therefore finds no error on this basis.[10]

### B. Remaining Claims of Error

Having concluded that remand is warranted, the Court will not address Mr. Gutierrez's remaining claims of error because they may be affected on remand. *See Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

---

[10] The Court expresses no opinion on the question of whether, in the absence of sufficient explanation to the contrary, the restrictions included in the RFC would have accounted for a moderate limitation in this area. At least one court in this District, citing persuasive reasons and legal authority, has found a moderate limitation in completing a workday without interruption from psychologically based symptoms to be facially inconsistent with an RFC for unskilled work. *Carrillo v. Saul*, 2020 WL 6136160, at *10 (D.N.M. Oct. 19, 2020). Conversely, the Tenth Circuit found in *Smith* that the claimant's moderate limitation in this area (along with numerous other moderate limitations) was incorporated into the RFC by restricting her to "simple, repetitive, and routine tasks." 821 F.3d at 1268–69. The undersigned notes in passing, however, some apparent inconsistency between *Smith* and the later-decided *Parker*, where similar RFC restrictions were found insufficient to account for the claimant's similar limitations. *See* 922 F.3d at 1172.

## IV. Conclusion

For the reasons stated above, IT IS HEREBY ORDERED that Mr. Gutierrez's Motion to Reverse and Remand (Doc. 39) is GRANTED. The decision of the Commissioner is hereby REVERSED, and this action is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
United States Magistrate Judge
Presiding by Consent